UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GENEVA D. WEEKLY,

            Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of
Social Security Administration,

            Defendant.

CASE NO.    C06-5406JKA

ORDER AFFIRMING
ADMINISTRATIVE DECISION

       This matter has been referred and reassigned to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter has been briefed and after reviewing the record, the Court affirms the Social Security Administration's decision denying plaintiff's application for social security benefits.

       Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's application for disability insurance benefits.  Specifically, plaintiff argues (1) the ALJ failed to fairly consider relevant medical evidence, (2) the ALJ should have concluded that Plaintiff's psychological/psychiatric conditions meet or equal the requirements of Listing 12.08, (3) the ALJ failed to fairly consider vocational expert testimony, and (4) the ALJ's decision is not supported by substantial evidence.  After reviewing the record, the court finds and orders as follows:

       1.  This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.

1   Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

2   as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.

3   389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less

4   than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

5   Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

6   interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th

7   Cir. 1984).  Here, the ALJ's decision is properly supported by substantial evidence and free of legal error.

8          2.  The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d

9   1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

10  experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

11  contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

12  and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

13  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

14  substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

15  physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747,

16  751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion

17  because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on

18  laboratory test results, contrary reports from examining physicians and on testimony from the claimant that

19  conflicted with the treating physician's opinion.

20         Plaintiff argues the ALJ ignored opinion evidence from Dr. Magione-Lambie, Dr. Wingate, and Dr.

21  Cosgrove indicating more severe limitations than those assigned by the ALJ.  Plaintiff further argues, as

22  noted above, that her limitations meet or equal the severity required to be considered disabled under §12.08

23  of the Medical Listings.  The requirements of Listing 12.08, Personality Disorders, are as follows:

24         A personality disorder exists when personality traits are inflexible and maladaptive and cause
           either significant impairment in social or occupational functioning or subjective distress.
25         Characteristic features are typical of the individual's long-term functioning and are not
           limited to discreet episodes of illness. The required level of severity for these disorders is
26         met when the requirements in both A and B are satisfied:

27             (A) Deeply ingrained, maladaptive patterns of behavior associated with one
                   of the following:
28
                   1. Seclusiveness or autistic thinking; or

ORDER
Page - 2

2. Pathologically inappropriate suspiciousness or hostility; or
3. Oddities of thought, perception, speech and behavior; or
4. Persistent disturbances of mood or affect; or
5. Pathological dependence, passivity, or aggressivity; or
6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

(B) Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, and pace; or
4. Repeated episodes of decompensation, each of extended duration.

The ALJ properly addressed the medical evidence in his decision. The ALJ summarized the medical evidence and concluded:

After reviewing the medical evidence, I find that the claimant has borderline personality disorder; PTSD; cocaine dependence; alcohol dependence; menstrual irregularities with headaches and back pain; pelvic pain; uterine fibroids; and an eating disorder, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 24). The ALJ's decision is particularly supported by the medical expert's, Dr. Johnson's, testimony, the assessment of the state agency assessments, as well as the reports prepared by Dr. Rasmussen, and Dr. Robinson. In calling the medical expert to testify at the hearing, the ALJ recognized the conflicting evidence in the record, and the ALJ appropriately weighed the expert's opinion heavily to resolve the difference of opinions concerning the severity of Plaintiff's limitations. The ALJ wrote:

As noted above, Dr. Johnson appeared and testified as the independent medical expert in this matter. He noted there were a wide range of diagnoses and GAF scores. He testified that he gave more credence to the reports and evaluations of Dr. Rasmussen and to the panel performing the IME because those evaluations are more detailed than DSHS evaluations.

Dr. Johnson further testified as follows: that the claimant does not meet or equal in severity, either singly or in combination, an impairment listed in Appendix 1, Subpart P, Regulations No. 4; that he questioned the claimant's credibility based on the forged prescriptions and her denials about driving when she was seen driving a new BMW into the parking lot for her examination with Dr. [Cosgrove]. Credibility was also questioned due to her cocaine and alcohol use and abuse and her claims that she was clean and sober and had gone through treatment but no treatment records have ever been produced. There was also note of her self-reporting of drug abuse in remission with no proof. Overall, Dr. Johnson diagnosed a borderline personality disorder and some degree of PTSD following the incident where her husband hit her on the forehead with a telephone receiver. He testified that he considered her activities of daily living only mildly to moderately impaired; her social functioning only mildly impaired; her concentration, persistence and pace moderately limited; with no evidence of episodes of decompensation. With such limitations he opined that the claimant

ORDER
Page - 3

would be mentally capable of returning to her past work as a school bus driver, but then changed his mind given her rating as moderately limited in her concentration, persistence or pace. When questioned about the claimant's fibroids, he suggested that the condition should not preclude work activity. His opinion was the same regarding her alleged headaches.

The claimant's attorney questioned the medical expert, based on a degree of severity of limitations not supported by the record. Therefore, the responses will be given appropriate weight.

I note that overall, the medical expert thoroughly reviewed the evidence and as noted above, placed more weight on exhibit 11F [Dr. Robinson's report] as the evidence was more recent and well done. He found the GAF scores of 60 and 65 more reasonable based on the overall record.

He testified that the DSHS examinations were mostly based on self-reports and were biased in order to provide the claimant with funds. Further, other reports were also given lesser weight because they were primarily based on self-reports and incomplete analysis on the effect of possible ongoing substance abuse, and with no analysis as to the accuracy of the data provided by the claimant when compared to the complete analysis provided in the Exhibit 11F psychiatric examination. In note that exhibits 11F and 2F suggest possible ongoing drug and alcohol use. I concur with the opinion of the independent medical expert as to the weight to be given the various reports, including those of DSHS.

(Tr. 23-24).

After reviewing the record, the undersigned finds the ALJ properly resolved the conflict in the medical evidence by relying on the testimony of the medical expert, the opinions consistent with the medical expert's statements, along with the ALJ's analysis of Plaintiff's credibility. Substantial evidence supports the ALJ's assessment of Plaintiff's limitations and the decision is free of any legal error.

3. Plaintiff argues the ALJ failed to properly evaluate the vocational expert's testimony and thus, failed carry the administration's burden of showing that Plaintiff is capable of performing certain work within the national economy.

It is the administration's burden to show that the plaintiff can perform other substantial gainful work that exists in the national economy. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The ALJ's use or reliance on a Vocational Expert is a common method for establishing the existence of such jobs. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The ALJ's findings will be upheld where the weight of the medical evidence supports the hypothetical questions posed by the ALJ. Martinez v. Heckler, 807 F.2d 771 (9th Cir. 1986). A vocational hypothetical must set forth all the reliable limitations and restrictions of the particular claimant that are supported by substantial evidence. See Osenbrock, 240 F.3d at 1162-63; Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Although the hypothetical may be based on

evidence which is disputed, the assumptions in the hypothetical must be supported by the record.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)(*citing* <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)).

The ALJ, relying on the vocational expert testimony, concluded Plaintiff was capable of performing work as an assembler or a cleaner/housekeeper.  The hypothetical posed to the Vocational Expert in this matter contained all of the limitations and impairments properly assigned by the ALJ.  Plaintiff's argument that the ALJ failed to pose a proper hypothetical that included all of Plaintiff's impairments is premised on the arguments that the ALJ erred when he evaluated the medical evidence.  As discussed above, the ALJ did not err as argued by Plaintiff.   The Vocational Expert testified that a person with Plaintiff's residual functional capacity, as assessed by the ALJ, could perform those types of jobs within the national and local economies.

4.  Accordingly, the Court AFFIRMS the Social Security Administration's final decision and this matter is DISMISSED in favor of defendant.

DATED this 4th day of January 2007.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge